RICHARD N. KOSS, SBN 251351
LAW OFFICES OF RICHARD N. KOSS
600 Allerton St. #202
Redwood City, CA  94063-1570
(650)722-7046
Fax: (650)399-0004
E-mail: richard@rkosslaw.com

Attorneys for Plaintiff:
LAMONT FRANCIES

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAMONT FRANCIES,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>**LIBERTY UNION HIGH SCHOOL DISTRICT, and DOES ONE THROUGH TWENTY, inclusive**,<br><br>　　　　　　Defendants | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**<br><br>1. Racial Discrimination (Title VII)<br>2. Racial Discrimination (FEHA)<br>3. Retaliation (FEHA)<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff LAMONT FRANCIES to complain against Defendants and each of them, to demand a jury trial of all legal issues, and to allege as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction as to federal subject matter issues pursuant to 28 U.S.C. § 1331 and pendant jurisdiction over related state claims.

2. Venue lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(c)(2). Defendant is subject to this Court's personal jurisdiction with respect to the present civil action in this judicial district.

3. Venue lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1391(b)(2), as the events giving rise to this claim occurred in this judicial district.

**FACTS COMMON TO ALL CLAIMS**

4.      At all times relevant to this complaint, Plaintiff LAMONT FRANCIES ("Plaintiff" or DR. FRANCIES"), a Black male, was a resident of the County of Contra Costa and a citizen of the State of California, over 18 years of age.

5.      Plaintiff earned and received his Doctorate in International & Multicultural Education on December 12, 2013 from the University of San Francisco. Since 2007, DR. FRANCIES is also a bi-vocational Senior Pastor at the Delta Bay Church of Christ in Antioch, California.

6.      DR. FRANCIES was employed as an Assistant Principal of Liberty High School ("Liberty"), a high school in the LIBERTY UNION HIGH SCHOOL DISTRICT ("Defendant" or "LUHSD") in the County of Contra Costa, State of California.

7.      DR. FRANCIES' first day as an Assistant Principal at Liberty was September 2, 2019, approximately one month after the school year had already begun. DR. FRANCIES was the only Black administrator at Liberty High School, one of the schools within LHUSD. He was forced to resign on June 12, 2020.

8.      The principal at Liberty was and is Heather Harper, who identifies as herself as Pacific Islander, being half-Hawaiian. The school administration at Liberty consisted of Mrs. Harper, one white male, two white females and DR. FRANCIES.

9.      The superintendent of LHUSD was and is Erik Volta (white male).

10.     Neither Ms. Harper nor Mr. Volta has a doctorate degree. Mr. Volta also does not posses a graduate level degree.

11.     For the seven years prior to 2020, Liberty has hired "the Black male administrator". DR. FRANCIES was the third in the line of this hiring trend for Liberty. For the 2019-20 school year, DR. FRANCIES was one the only Black male administrator in LHUSD. DR. FRANCIES was one out only two Black administrators in the district. For the 2019-20 school year only 2 out 27 administrators in LUHSD were Black.

12.     Among DR. FRANCIES' accomplishments during his short tenure at Liberty were that he:

a. Started the first LUHSD Black Educators Association;

b. Was President of the LUHSD Black Educators Association 2019-20;

c. Facilitated African American Boys Intervention Group (group assisted in reducing truancy and improving G.P.A.s);

d. Facilitated African American Girls Intervention Group;

e. Facilitated Latino Boys Intervention Group;

f. Co-Facilitated Liberty Campus Climate Groups;

g. Facilitated and produced Equity Focused Professional Developments for the English Department, a presentation that was well-received by Liberty staff;

h. Was Guest Lecturer for African American Studies Course (2) (*Discourse on the Antebellum Slavery in the U.S. South/ "I May Not Get There with You; The Real Martin Luther King, Jr.)*;

i. Organized the Liberty Black Parent Group (Organized presentation of quantitative data: Liberty-Black disproportionality);

j. Organized the Liberty BSU Black History Month Program (Brought in renown Historian Tony Browder as keynote speaker);

k. Organized LUHSD Black Baccalaureate for 2020 Graduates.

13. Many Black students and families came to DR. FRANCIES as the lone Black administrator to advocate for them against racial hostilities on the Liberty campus. DR. FRANCIES expressed numerous times to Ms. Harper that it was difficult to balance his loyalty to Liberty with students' and parents' cries of racial injustice at Liberty. Ms. Harper responded, "I did not hire a diversity coordinator. I hired an assistant principal."

14. Ms. Harper constantly criticized and castigated DR. FRANCIES' job performance. The criticisms were mostly subjective and were directly or indirectly related to racial issues.

15. On December 9, 2019, DR. FRANCIES chaired a Black Parent Meeting and presented at that meeting on racial disproportionality at Liberty. Mrs. Harper attended the meeting and constantly interrupted DR. FRANCIES, citing "Black student progress" regarding

suspension and graduation rates. The Black parents in the room were allowed to voice their opinion about the racial campus climate. Many parents in the room seemed apprehensive to talk because of Mrs. Harper's presence and their fear of retribution. A few parents spoke up, but when Ms. Harper left because she had a prior engagement, the room opened up and many more Black parents stressed their concern about the racial climate at Liberty.

16. The following day during lunch supervision, DR. FRANCIES mentioned to Mrs. Harper that the room opened up after she left. She took offense to that and to DR. FRANCIES' comment to not take it personally. Ms. Harper refused to acknowledge that many Blacks are uncomfortable airing racial grievances in front of whites for fear of retaliation, and told DR. FRANCIES, "I'm the principal here, and I'm going to be at any meeting that is called on this campus". She then told DR. FRANCIES she would be chairing the next Black Parent Meeting in January, completely ignoring the cultural sensitivities. Mrs. Harper then cancelled the Black Parent Meeting in January and moved it to February which angered several Black parents.

17. On January 22, 2020, Mrs. Harper requested DR. FRANCIES to investigate a dispute between a Black girl and a Hispanic girl. After speaking to both girls for more than one hour, DR. FRANCIES did not feel he had sufficient evidence to discipline either girl and sent them both back to class. Rather than accept DR. FRANCIES' findings, Ms. Harper brought the Black girl into DR. FRANCIES' office, telling him the girl had engaged in behavior of which DR. FRANCIES was unaware. As documented in Aries, a database where LHUSD keeps student data, the Black female student did receive the proper disciplinary actions for her behavior. The following day, Ms. Harper called DR. FRANCIES into her office and accused him of "showing favoritism towards Black students."

18. DR. FRANCIES asked Mrs. Harper to give him quantitative or qualitative evidence of his favoritism. Ms. Harper replied that a) DR. FRANCIES sent that African American student back to class the day before, b) he "did not seem too enthusiastic about an issue dealing with Latino students." The issue involving Latino students was assigned to another Assistant Principal, not DR. FRANCIES.

19. DR. FRANCIES complained to Mrs. Harper that he felt as if he was hired to fulfill a racial quota as a token hire. Mrs. Harper responded that she was colorblind and did "not see race".

20. Mrs. Harper chaired the Black Parent Meeting on February 24, 2020. She insisted she wanted to hear the concerns of Black students and parents. Mrs. Harper entered the meeting with only a pen and notepad, and without any form of quantitative or qualitative data on Black student progress. One Black mother cried when she thought about sending her daughter to school at Liberty. That evening, Mrs. Harper heard Liberty described as a place of racial hostility and a place that promotes institutional racist practices that are evident by its years of disproportionality. Mrs. Harper tried her best to defend the school and herself after coming under attack by members of the local chapter of the NAACP for her perceived racial insensitivity.

21. The Black parents and students repeatedly told Principal Harper how much DR. FRANCIES' presence meant to Blacks on Liberty's campus. After almost two hours of parents voicing their concerns, the meeting ended.

22. After the meeting the president of the local chapter of the NAACP told the Black parents and employees that anyone who perceived they were retaliated against from being at or speaking at that night's meeting should contact the NAACP.

23. Two nights after the February 24 meeting, Ms. Harper, with the approval from Mr. Volta, attended the School Board meeting and recommended that DR. FRANCIES be released from his position at the conclusion of the school year.

24. On February 28, 2020, DR. FRANCIES was summoned to Ms. Harper's office after school had ended. Denise Rugani, LHUSD's head of Human Resources, was also present. Ms. Rugani informed DR. FRANCIES that he was terminated as of the end of the school year. She told DR. FRANCIES he could resign from his position in order to avoid a "non-reelect" on his record.

25. On March 4, 2020, over 175 Liberty students, most of them Black, walked out of class protesting DR. FRANCIES' impending termination. The students participated in a peaceful

demonstration where they read speeches voicing their anger with Liberty's overt and covert racist policies.

26. On March 5, 2020, DR. FRANCIES sent a letter to Mr. Volta requesting a change of placement from Liberty. Mr. Volta met later that day with DR. FRANCIES, who voiced his concern that he was being blamed for the protests and no longer felt he could do his job at Liberty. Mr. Volta said he would consider the move.

27. A few days later, DR. FRANCIES, fearful of having an unexplainable non-reelect—which would hurt his chances of future employment—on his record, reluctantly submitted his letter of resignation to Ms. Rugani.

28. On March 11, 2020, a second Black protest ensued with more than 80 students blocking the entrances to Liberty. The students were protesting DR. FRANCIES' firing and other racial injustices at Liberty. Ms. Harper told only DR. FRANCIES, and not the three other Assistant Principals who were also standing and observing the protest, to get the students to return to class and to break up the protest.

29. Mr. Volta accused DR. FRANCIES of instigating the protest and stated, "I wonder what would the black community who is supporting you would feel if I told them that you really did not want to work as an assistant principal here at Liberty and what you really wanted the whole time was an office job for yourself down at the district." DR. FRANCIES was incredulous. Mr. Volta continued, "How would the Black people who support you feel if I told them you didn't even want your job and you were planning to leave at the end of the year?" This was a completely untrue statement and DR. FRANCIES felt he was being blackmailed.

30. DR. FRANCIES attempted to reason with Mr. Volta. Mr. Volta turned his back and walked away while he was speaking to DR. FRANCIES. Mr. Volta spoke to DR. FRANCIES in front of students as if he were a slave on a plantation: "I have nothing else to say, Dr. Francies. Get back to work!"

31. Dr. Tony Shah, Assistant Superintendent of LHUSD, spoke to DR. FRANCIES around the end of the school day. Dr. Shah told DR. FRANCIES that Mr. Volta had granted DR. FRANCIES' request for a transfer on the grounds that he was to inform the Black student body

at Liberty that it was his decision not to finish the school year at Liberty. DR. FRANCIES spoke to several Black students and informed them of his decision to be transferred because of the racial hostility from some Liberty staff.

32. That evening, the LHUSD School Board met. Between 40 and 50 Black staff, students, and parents flooded the school board meeting in order to voice their dissatisfaction with DR. FRANCIES' non-re-elect. Eighteen speakers in a row are on record speaking on DR. FRANCIES' behalf, pleading with the school board officials to change their minds. Black students and parents spoke out against what they felt was an atmosphere racial discrimination at Liberty which led to DR. FRANCIES' termination.

33. The following day, DR. FRANCIES was summoned to a meeting with Mr. Volta, Ms. Rugani, and the two Assistant Superintendents. Mr. Volta apologized for his outburst the day before and praised DR. FRANCIES for his cultural responsiveness and displayed skillset. During the meeting, Ms. Rugani asked DR. FRANCIES if he would like to withdraw his letter of resignation. DR. FRANCIES replied that he would.

34. On April 8, 2020, despite DR. FRANCIES' affirmation that he wanted to withdraw his letter of resignation, the letter was put before the LHUSD School Board and accepted. LHUSD's official record states DR. FRANCIES resigned.

35. On May 20, 2020, Mr. Volta met via Zoom with the East Contra Costa County NAACP. The NAACP urged Mr. Volta to employ DR. FRANCIES in 2020-2021 in a position working with equity in LHUSD. Mr. Volta told the NAACP, "There are reasons I can't discuss why I can't bring him back because he disrespected our diversity coordinator Mr. Jesse Gosset." DR. FRANCIES had never spoken ill of Mr. Gossett.

36. On June 5, 2020, the Liberty yearbook was released. Missing from the yearbook were pictures the Liberty High School Black Students' Union as well as DR. FRANCIES. Black parents and students were enraged and sent letters to LHUSD officials, including more accusations of institutional racism by Mrs. Harper. Black students attending Liberty also confronted Mrs. Harper about the social media posts of her son, who is a Liberty student but

identifies as white. The social media posts included racist epithets denigrating Blacks. Mrs. Harper has since acknowledged the posts and apologized to the Black student body.

37.   DR. FRANCIES complained about the racial disparities in suspensions at Liberty and Freedom High Schools. (Freedom is a comprehensive high school within the LUHSD.) He offered structural solutions to LHUSD's problems, but they were ignored.

38.   On the evening of December 10, 2019, DR. FRANCIES attended a Black Parent Meeting at Freedom High School. DR. FRANCIES was invited by a few of the Black staff members employed there. DR. FRANCIES shared some of the best practices at Liberty for its Black student population.

39.   The next day, after a Black parent from Freedom High came to Liberty the next day with a gift to thank DR. FRANCIES for his presence and verbal contributions to the meeting the night before, Mrs. Harper approached DR. FRANCIES. Mrs. Harper chastised DR. FRANCIES, saying that I did not have the right to attend a meeting outside of Liberty without informing the administrative team at Liberty first. DR. FRANCIES was puzzled by her response and apologized replying to her that he did not understand what was evidently an unwritten school policy. She accused DR. FRANCIES of "preaching" to the parents at the meeting. DR. FRANCIES found this accusation and racial micro-aggression quite demeaning

40.   The true names or capacities, whether individual, corporate, partner, associate, or otherwise, of Defendants DOES One through Ten, inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed, believes, and thereon alleges that each of the Defendants designated herein as a DOE is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the wrongful conduct of these defendants. When Plaintiff determines the true identity of each DOE defendant, Plaintiffs will amend the pleadings to name said DOES by their true names, legal status, and relationships.

41.   Plaintiff is informed, believes, and thereon alleges that DOES Eleven through Twenty, and each of them, were and are the managerial employees of Defendant LHUSD and DOES One through Ten. In doing the acts and things hereinafter alleged, these management

employees and DOES Eleven through Twenty have been acting within the course and scope of their agency and/or employment and with the permission and consent of Defendants LHUSD and DOES One through Ten. Said management employees have been in such a significant position that they have been able to determine the policy of the Defendant LHUSD. Plaintiff is ignorant of their true names and capacities and therefore refers to them as DOES. When Plaintiff determines the true identity of each DOE defendant, Plaintiff will amend the pleadings to name said does by their true names, legal status, and relationships.

42. Plaintiff alleges each defendant has acted with knowledge, instructions, and ratification of each of the other supervising defendants.

43. Plaintiff alleges that at all times herein mentioned each of the above-mentioned defendants has been the agent and employee of each of the remaining defendants, and in doing the things hereinafter alleged, has been acting within the course and scope of such agency and employment.

44. The term "DEFENDANT EMPLOYER" will refer to Defendant LHUSD and DOES One through Ten acting by and through itself and its management employees and DOES Eleven through Twenty, and each of them, unless otherwise indicated.

45. Plaintiff alleges each defendant has acted with knowledge, instructions, and ratification of each of the other supervising defendants.

46. Plaintiff alleges that at all times herein mentioned each of the above-mentioned defendants has been the agent and employee of each of the remaining defendants, and in doing the things hereinafter alleged, has been acting within the course and scope of such agency and employment.

47. This is a complaint by an employee against DEFENDANT EMPLOYER for damages arising out of Defendant's discrimination against Plaintiff because of his race and Defendant's retaliation against Plaintiff because he complained about discrimination. Plaintiff seeks general, special, compensatory, and incidental damages.

48. As a direct, foreseeable, and proximate cause of the acts of defendants and each of them, DR. FRANCIES has become mentally upset, distressed, and aggravated, resulting in

actual and severe physical injury. The emotional distress was severe and has resulted in physical injuries such as insomnia, intense headaches, nausea, crying, having nightmares, and shortness of breath. DR. FRANCIES has needed and received therapeutic care as a result of the unlawful acts of defendants and each of them. DR. FRANCIES has also suffered mental and emotional injuries. DR. FRANCIES therefore claims general damages for such mental distress and aggravation in a sum according to proof. As a direct, foreseeable, and proximate cause of the wrongful conduct by defendants and each of them, DR. FRANCIES suffered personal injuries. DR. FRANCIES seeks an award for these damages according to proof.

49. As a further direct, foreseeable, and proximate cause of the wrongful conduct by defendants and each of them, DR. FRANCIES suffered a loss of tangible employment benefits including lost wages and fringe benefits in an amount according to proof. DR. FRANCIES has applied for 19 administrative positions since being fired from Liberty Union High School District. He secured three interviews and has not been able to gain employment as an administrator since his release. As a result, DR. FRANCIES had to apply for unemployment insurance for the first time in his life. DR. FRANCIES is the sole wage earner for his household consisting a wife and five children of 12 and under.

**FIRST CLAIM**

**RACIAL DISCRIMINATION (TITLE VII)**

As a First, separate and distinct claim, Plaintiff complains against Defendants LUHSD and DOES ONE THROUGH TWENTY, and for a cause of action alleges:

50. Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 49, inclusive.

51. At all times relevant to this Complaint, Title VII of the Civil Rights Act of 1964 ("Title VII") (42 USC § 2000e et seq.) and its implementing regulations were in full force and effect.

52. At all relevant times, LUHSD employed at least fifteen people and was an employer as defined by Title VII.

53. DEFENDANT EMPLOYER was prohibited under Title VII from discriminating against any employee on the basis of race.

54. DR. FRANCIES alleges Title VII obligated DEFENDANT EMPLOYER to take all reasonable steps necessary to prevent and remedy discrimination in the workplace occurring on the basis of race.

55. DR. FRANCIES filed a complaint with the Equal Employment Opportunity Council ("EEOC") against LHUSD on July 10, 2020, within the time limit mandated by the Title VII. Said complaint alleged facts contained within this Complaint and supported each cause of action herein that alleges violations of Title VII. DR. FRANCIES requested a right to sue from the EEOC on October 8, 2020, but has not received a right to sue letter from EEOC as yet. As 180 days has passed since the filing of the complaint with the EEOC, DR. FRANCIES files this complaint, as is his right, before receiving his right to sue from the EEOC.

56. DEFENDANT EMPLOYER, through its agents including Ms. Harper and Mr. Volta, engaged in a calculated program against DR. FRANCIES because he is Black. DEFENDANT EMPLOYER condoned and ratified the discrimination directed against DR. FRANCIES by his immediate supervisors. Such discrimination, as pleaded above, included numerous incidents of treating DR. FRANCIES differently than non-Black administrators. Finally, DR. FRANCIES' race was a motivating factor in his termination.

57. DEFENDANT EMPLOYER's agents' comments and actions discriminated against DR. FRANCIES on the basis of him being Black, and changed the terms and conditions of his employment.

58. DR. FRANCIES further alleges that one of the real reasons of LHUSD's disparate treatment and termination of DR. FRANCIES was because DEFENDANT EMPLOYER discriminated against Blacks as alleged herein.

59. DR. FRANCIES necessarily has and will incur legal fees related to this civil action, and therefore, pursuant to Title VII, requests an award of attorney's fees and costs against Defendants and each of them.

60. DR. FRANCIES prays for relief as set forth below.

## SECOND CLAIM

## DISCRIMINATION BECAUSE OF RACE (FEHA)

As a Second, separate and distinct claim, Plaintiff complains against Defendants LUHSD and DOES ONE THROUGH TWENTY, and for a cause of action alleges:

61. Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 60, inclusive.

62. At all times relevant to this Complaint, the California Fair Employment and Housing Act ("FEHA", Cal. Gov't Code § 12900, *et seq.*) and its implementing regulations were in full force and effect.

63. At all relevant times, LUHSD employed at least five people and was an employer as defined by the FEHA.

64. Pursuant to California Government Code section 12940 it is unlawful for an employer to discriminate against an employee because the basis of race.

65. DR. FRANCIES alleges the FEHA obligated DEFENDANT EMPLOYER to take all reasonable steps necessary to prevent and remedy discrimination in the workplace occurring on the basis of race.

66. DR. FRANCIES filed a complaint with the EEOC against LHUSD within the time limit mandated by Title VII Said complaint alleged facts contained within this Complaint and supported each cause of action herein that alleges violations of Title VII. As a result of filing a proper and timely complaint with the EEOC, DR. FRANCIES received a right to sue from the California Department of Fair Employment and Housing ("DFEH") on July 20, 2020.

67. DEFENDANT EMPLOYER, through its agents including Ms. Harper and Mr. Volta, engaged in a calculated program against DR. FRANCIES because he is Black. DEFENDANT EMPLOYER condoned and ratified the discrimination directed against DR. FRANCIES by his immediate supervisors. Such discrimination, as pleaded above, included numerous incidents of treating DR. FRANCIES differently than non-Black administrators. Finally, DR. FRANCIES' race was a substantial motivating factor in his termination.

68. DEFENDANT EMPLOYER's agents' comments and actions discriminated against DR. FRANCIES on the basis of him being Black, and changed the terms and conditions of his employment.

69. DR. FRANCIES further alleges that one of the real reasons of LHUSD's disparate treatment and termination of DR. FRANCIES was because DEFENDANT EMPLOYER discriminated against Blacks as alleged herein.

70. As pleaded above, DR. FRANCIES suffered economic and non-economic damages. DEFENDANT EMPLOYER's adverse employment actions against DR. FRANCIES because he complained of harassment and discrimination were substantial factors in causing harm to him.

71. DR. FRANCIES necessarily has and will incur legal fees related to this civil action, and therefore, pursuant to the FEHA, requests an award of attorney's fees and costs against Defendants and each of them.

72. DR. FRANCIES prays for relief as set forth below.

## THIRD CLAIM

## RETALIATION FOR OPPOSING DISCRIMINATORY PRACTICES (FEHA)

As a Third, separate and distinct claim, Plaintiff complains against Defendants LUHSD and DOES ONE THROUGH TWENTY, and for a cause of action alleges:

73. Plaintiff incorporates by reference and re-alleges as if fully stated herein the material allegations set out in paragraphs 1 through 72, inclusive.

74. The FEHA prohibited DEFENDANT EMPLOYER from taking any adverse action against DR. FRANCIES for complaining about harassment or discrimination in his employment.

75. DR. FRANCIES complained to Ms. Harper about DEFENDANT EMPLOYER's discrimination against him because of his race. DR. FRANCIES also complained to Ms. Harper and Mr. Volta about discrimination against Blacks at Liberty and in the LHUSD.

76. DR. FRANCIES was terminated as of June 12, 2020, but was effectively terminated on February 28, 2020, only four days after the Black Parents' Meeting, when Ms. Rugani told him that he was being terminated.

77. DR. FRANCIES' complaints regarding DEFENDANT EMPLOYER's discrimination against him because of his race and against Black students because of their race were substantially motivating factors for his termination by LHUSD.

78. As pleaded above, DR. FRANCIES suffered economic and non-economic damages. DEFENDANT EMPLOYER's adverse employment actions against DR. FRANCIES because he complained of harassment and discrimination were substantial factors in causing harm to him.

79. DR. FRANCIES necessarily has and will incur legal fees related to this civil action, and therefore, pursuant to Government Code section 12965(b), and other State laws, requests an award of attorney's fees and costs against Defendants and each of them.

80. DR. FRANCIES prays for relief as requested below.

WHEREFORE, Plaintiff seeks judgment against Defendants, and each of them, for:

1. General damages in a sum according to proof;
2. Recission of his letter of resignation to LHUSD;
3. Plaintiff's actual compensatory, consequential, and incidental losses, including but not limited to loss of income, both "back pay" and prospective "front pay" and benefits, according to proof, together with prejudgment interest;
4. A money judgment for mental pain and anguish and emotional distress, and other general damages according to proof;
5. Special damages for medical injuries, medical care, and related medical expenses;
6. Attorney fees according to proof;
7. Any and all equitable remedies to which Plaintiff is entitled under Title VII, including but not limited to, reinstatement and protective orders;

8. Any and all equitable remedies to which Plaintiff is entitled under the FEHA, including but not limited to, reinstatement and protective orders;

9. Costs of suit; and

10. For such other and further relief, including equitable relief, as the court deems proper.

Dated: January 29, 2021                    LAW OFFICES OF RICHARD N. KOSS

_____
RICHARD N. KOSS, Attorney for
Plaintiff LAMONT FRANCIES

**DEMAND FOR JURY TRIAL**

Plaintiff LAMONT FRANCIES hereby demands a trial by jury of all legal issues.

Dated: January 29, 2021                    LAW OFFICES OF RICHARD N. KOSS

_____
RICHARD N. KOSS, Attorney for
Plaintiff LAMONT FRANCIES